UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 15-10338-FDS |
| | ) | |
| 42.  MANUEL MARTINEZ, | ) | |
| a/k/a "Gordo," | ) | |
| Defendant | ) | |

GOVERNMENT'S SENTENCING MEMORANDUM

On July 26, 2016, Manuel Martinez, a/k/a "Gordo" (hereinafter the "defendant") pleaded guilty to one count of a multi-count superseding indictment charging him with conspiracy to distribute cocaine. The Pre-Sentence Report prepared by the United States Probation Office, dated October 4, 2016 ("PSR"), calculated the defendant's guideline sentencing range ("GSR") as 12-18 months. See PSR, ¶91. For reasons to be discussed in greater detail at the defendant's sentencing hearing, the government recommends that the defendant be sentenced to 15 months in prison, a sentence within his advisory GSR, and three years of supervised release.[1]

For three years, the Federal Bureau of Investigation's North Shore Safe Streets Task Force (the "FBI Task Force") conducted an investigation into the transnational criminal organization known as La Mara Salvatrucha or MS-13. As is set

---

[1] Once sentenced on his conviction for a drug trafficking offense, the defendant will face likely deportation.

forth in more detail in the PSR, the FBI Task Force identified numerous MS-13 gang members who were involved in acts of violence in the District of Massachusetts. The investigation also revealed that MS-13 members frequently sold heroin, cocaine, cocaine base, and marijuana. During the investigation, agents directed a cooperating witness (CW-1) to make controlled purchases from MS-13 members directly or from drug suppliers who associated with MS-13 members, including the defendant.

CW-1 was introduced to the defendant by several members of the Eastside Loco Salvatrucha (ESLS) MS-13 clique. On October 11, 2013, and October 15, 2013, CW-1 purchased a total of three ounces of cocaine from the defendant in exchange for $3,300 in government funds. After the defendant's second cocaine sale to CW-1 (for two ounces of cocaine), CW-1 met a member of ESLS, Jose Hernandez-Miguel, a/k/a "Muerto," and provided Hernandez-Miguel with $100 in government funds to the ESLS clique for facilitating the transaction.

In his sentencing memorandum, the defendant insists that he entitled to a reduction for completing a "safety valve" proffer pursuant to U.S.S.G. § 5C1.2. Simply put, the defendant did not provide agents with information on other drug sales, drug customers, or drug suppliers, and did not provide any meaningful information on his arrest in a separate investigation, where the Massachusetts State Police seized 68 grams of cocaine and $3,144

2

in cash from him. See PSR, ¶¶ 24-27. Though the two controlled buys and the State Police arrest took place in the same month, agents demonstrated that the defendant was able to acquire multi-ounce quantities of cocaine on short notice. In the government's view, the defendant did not satisfy the requirements of U.S.S.G. § 5C1.2.[2]

The government's recommendation balances the nature of the defendant's offense, his personal history, the need to specifically deter him from future criminal conduct, and the need to protect the public. It is a sentence which is sufficient, but not greater than necessary, to achieve the goals of sentencing. See 18 U.S.C. §3553(a).

---

[2] A defendant who seeks the benefit of the safety valve bears the burden of proving, by a preponderance of evidence, "that he has made truthful, complete, and timely disclosures to the government." United States v. Larios, 593 F.3d 82, 88-89 (1st Cir. 2010), quoting United States v. Bermudez, 407 F.3d 536, 542 (1st Cir. 2005). The safety valve requires "straight talk; equivocations, half-truths, and veiled allusions will not do." United States v. Matos, 328 F.3d 34, 38 (1st Cir. 2003). In moving to deny the defendant the safety valve, the First Circuit has been clear that while "the Government cannot ensure success simply by saying 'we don't believe the defendant' and doing nothing more," United States v. Miranda-Santiago, 96 F.3d 517, 529 (1st Cir. 1996), the government is not obligated to provide independent rebuttal evidence. See United States v. Marquez, 280 F.3d 19, 24 (1st Cir. 2002) ("[A] sentencing court may reject a safety valve proffer based on its reasoned assessment of the defendant's credibility in light of the facts"). The Court's credibility determination, based on the record as a whole, is essentially a "common sense judgment." United States v. Montanez, 82 F.3d 520, 523 (1st Cir. 1996).

Wherefore, the government respectfully requests that this Court sentence the defendant to 15 months in prison and three years of supervised release.

                              Respectfully submitted,

                              CARMEN M. ORTIZ
                              United States Attorney

                    By:   /s/ Christopher Pohl
                          Christopher Pohl
                          Peter K. Levitt
                          Glenn A. MacKinlay
                          Assistant U.S. Attorneys

                       CERTIFICATE OF SERVICE

    I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 7, 2016.

                          /s/ Christopher Pohl
                          Christopher Pohl
                          Assistant U.S. Attorney